IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DAO HEALTH,<br><br>               Plaintiff,<br><br>v.<br><br>CHIARO TECHNOLOGY LIMITED.,<br><br>               Defendant. | Civil Action No. 2:23-cv-00289<br><br>PATENT CASE<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff Dao Health ("Dao Health") makes the following allegations against Defendant Chiaro Technology Limited. ("Chiaro")

### BACKGROUND

1. This Complaint asserts causes of action for infringement of the following United States Patents owned by Dao Health: United States Patent Nos. 7,559,915 ("the '915 Patent"); and 8,118,772 ("the '772 Patent") (collectively the "Asserted Patents").

### THE PARTIES

2. Plaintiff Dao Health is a corporation organized and existing under the law of California, with its principal place of business at 1345 Easy Lane, El Dorado Hills, California 95762.

3. Upon information and belief, Defendant Chiaro is a corporation organized and existing under the laws of the United Kingdom, with its principal place of business at 63-66 Hatton Garden, Second Floor, London, United Kingdom EC1N 8LE. On information and belief, Chiaro

1

conducts business using its trade name Elvie, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Chiaro because Chiaro has established minimum contacts with the state of Texas and with this judicial district such that this venue is a fair and reasonable one. On information and belief, Chiaro conducts substantial business in this forum, including (a) engaging in the infringing conduct alleged herein in Texas and in this judicial district; (b) regularly and consistently doing and soliciting business; (c) engaging in other persistent courses of conduct such as providing customer service and warranty repairs in connection with its business operations in Texas and in this judicial district; (d) deriving substantial revenue by its offering of infringing products and services and providing infringing goods to consumers in Texas and in this judicial district; and (e) purposefully establishing substantial, systematic, and continuous contacts with the state of Texas and with this District such that it should reasonably expect to be subject to suit here in this judicial district.

6. In the alternative, Federal Rule of Civil Procedure 4(k)(1)(A) confers personal jurisdiction over Chiaro because, upon information and belief, Chiaro regularly conducts, transacts, and/or solicits business in Texas and in this judicial district; derives substantial revenue from its business transactions in Texas and in this judicial district; and otherwise avails itself of the privileges and protection of the laws of the State of Texas such that this Court's assertion of jurisdiction over Chiaro does not offend traditional notions of fair play and due process. On

information and belief, Chiaro's unlawful infringing actions have caused and will continue to cause injury to Dao Health in Texas and in this judicial district such that Chiaro should reasonably expect such actions to have consequences in Texas and in this judicial district.

7. In addition, this Court may exercise personal jurisdiction over a foreign non-resident of the state in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(f). Personal jurisdiction over Chiaro is authorized pursuant to Texas Civil Practice and Remedies Code, Title 2, Subtitle B, Chapter 17, Subchapter C, which provides in pertinent part:

> Long-Arm Jurisdiction in Suit on Business Transaction or Tort
>
> Sec. 17.041. Definition. In this subchapter, "nonresident" includes:
>
> > (1) an individual who is not a resident of this state; and
> > (2) a foreign corporation, joint-stock company, associate, or partnership.
>
> Sec. 17.042. Acts Constituting Business in this State. In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> > (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
> > (2) commits a tort in whole or in part in this state.

Acts 1985, 69th Leg., ch. 959, Sec. 1 (Sept. 1, 1985).

8. Upon information and belief, at all times relevant hereto, Chiaro was and is systematically directing and/or targeting its business activities at consumers in Texas, including in this judicial district, through its own online platform at http://www.elvie.com, via online marketplaces such as Amazon.com, as well as using its agents, retail partners, and distributors such as Walmart, Best Buy, Target, and Costco (see https://www.elvie.com/en-us/partners/b2b-partners) to reach consumers. Consumers in the United States, including in Texas and in this judicial district, can access and purchase one or more of Chiaro's infringing products through

Amazon and Costco, each of whom maintains facilities such as warehouses in this judicial district, as well as through Walmart, which operates a Walmart Supercenter in Marshall, Texas, and Target, which operates a store in Longview, Texas.

9. Upon information and belief, Chiaro exercises control over its agents, retail partners, and distributors that conduct Chiaro's business in Texas and in this judicial district. For example, Chiaro limits its product warranty to infringing products purchased directly from www.elvie.com and its authorized sellers. *See* https://www.elvie.com/en-us-warranty ("[T]his limited warranty applies only to original purchasers of Elvie Product(s) that were purchased from Chiaro or a Chiaro authorized seller in the United States[.]").

10. Chiaro, directly and through subsidiaries or intermediaries (including its agents, retail partners, and distributors) has purposefully and voluntarily placed its infringing products into this judicial district and into the stream of commerce with the intention and expectation that the infringing products will be purchased for use in Texas and in this judicial district. Chiaro has imported, offered for sale and sold, and continues to import, offer for sale and sell, infringing products for use in this judicial district. Chiaro has intentionally targeted Texas, and this judicial district, for its business activities, and has purposefully availed itself of the benefits of conducting business in Texas such that it should reasonably anticipate being subject to its laws and the jurisdiction of its courts. Chiaro derives benefits from its presence in this judicial district, including, but not limited to, sales revenue and serving customers using its infringing products in this district. Chiaro is also aware that its unlawful infringing actions alleged herein are likely to cause injury to Dao Health in the United States, in Texas and in this judicial district specifically, due to Chiaro's substantial commercial activities in Texas which give rise to Dao Health's infringement allegations herein.

11. Venue is proper in this judicial district because, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) and (c)(3) and/or 28 U.S.C. § 1400(b), Chiaro is not resident in the United States and thus may be sued in any judicial district, including this one.

## DAO HEALTH AND THE ASSERTED PATENTS

12. The Asserted '915 and '772 Patents, each entitled "Breast Pump Device With Self-Contained Breast Milk Reservoir," issued on July 14, 2009 and February 21, 2012, respectively, and are assigned to Dao Health. *See* Exhibits 1 ('915 Patent) and 2 ('772 Patent). Dao Health owns all rights, title and interest in and to the Asserted Patents, including the right to assert all causes of action under these patents and the right to any remedies for the infringement of the patents.

13. Dao Health was founded by wife and husband team, Dr. Stella Dao and Dan Garbez, who sought to revolutionize traditional breast milk pumps which required breastfeeding mothers to undress and seclude themselves in a room while pumping breast milk for later use. Dr. Dao, an emergency physician, co-invented the Freemie® breast milk collection system with her husband shortly after the birth of their premature twins, inspired after learning firsthand how difficult it is to keep breastfeeding given the challenges attendant to the act of pumping itself, as well as those attributable to the environment, *i.e.*, multitasking while inside the home or outside the home in public or at a fast-paced office or business setting.

14. The Dao Health founders filed a provisional patent application on their breast pump inventions on October 13, 2004 and brought the Freemie® breast milk collection system to market in 2009.

15. Dr. Dao and Mr. Garbez created the Freemie® system so that moms will now have the choice to pump anywhere they choose because the milk collection devices are worn in a

woman's bra, and can be put in place and used without having to undress. Being able to pump hands-free and concealed gives lactating moms more opportunities to pump when and where they want. Dao Health hoped that moms pumping in bathroom stalls or in a lactation room to express milk for their infants would become a thing of the past. Instead, a mom could choose to pump in a wide variety of environments, while at home with her other children, while at work, at a restaurant, or even while interacting with others face to face. Dr. Dao has stated that she conceived the system because of the demands of her job in the ER, and then developed it because as a physician she felt a responsibility to help moms that did not have the proper tools to succeed at breastfeeding. Dao Health hopes that the Freemie® system will revolutionize breast milk pumps and make a contribution to public health by empowering breastfeeding mothers with better tools that allow them the freedom to pump wherever and whenever they want.

16. The Asserted Patents are directed to breast milk collection devices which are compact, ergonomic, and can fit discreetly within a woman's brassiere to allow for hands-free breast milk collection. '915 Patent, 1:13-16, 5:6-8; '772 Patent, 1:17-21, 8:27-29. At a high level, the invention comprises a breast adaptor which is a funnel-shaped inlet coupled to a reservoir, wherein when the breast is inserted into the breast adaptor, the expressed breast milk flows or drips into the reservoir and is held there until the device is removed and emptied. '915 Patent, 5:12-16; '772 Patent, 8:34-40. Different embodiments of the invention are focused on varying details concerning components such as the reservoir, the breast adaptor, tubing, suction sources, and the valve assembly. '915 Patent, 5:16-19; '772 Patent, 8:40-53.

17. To provide notice to the public that the Freemie® line of products is protected by patents, Dao Health has at all relevant times affixed the Asserted Patent number(s) to the packaging of Freemie® products.

## CHIARO'S ELVIE PUMP

18. Launched in September 2018, Chiaro's Elvie Pump "fits in a nursing bra and is portable, electric and wireless, meaning new mothers can now get on with daily life whilst expressing for their baby!" *See* https://www.elvie.com/en-us/blog/elvie-pump-from-idea-to-execution. The Elvie Pump is a "slimline wearable electric breast pump [that] tucks discreetly in-bra." *See* https://www.elvie.com/en-us/shop/elvie-pump/.



19. Chiaro manufactures, markets, imports, offers to sell, and sells the Elvie Pump as a breast milk collection device. This device is configured to fit within and be supported by a lactating woman's brassiere. A source of application and relief of vacuum force in a housing transmits alternating vacuum force through tube(s) and through aperture(s) in the housing to a first side of a flexible barrier. The alternating vacuum force is transferred to a second side of the flexible barrier

7

and to the drip tube formed at the narrow end of the adaptor. The distal end of the drip tube includes an aperture communicating with a valve, which extends into the reservoir. The reservoir is attached to and extends below the housing and adaptor. The flexible barrier is lodged in and extends across a rigid barrier housing formed by a raised ring structure on the housing and the rigid barrier housing attached to the valve assembly.

**CHIARO'S ELVIE STRIDE**

20. Chiaro also manufactures, markets, imports, offers for sale and sells a breast milk pump and collection device called the Elvie Stride. *See* https://www.elvie.com/en-us/shop/elvie-stride.



21. Launched in September 2021, the Elvie Stride is a "hands-free, hospital-grade performance electric breast pump" that offers a powerful yet quiet pumping experience. It comprises a funnel shaped adaptor configured to receive a portion of a lactating woman's breast at a receiving end. A second end of the adaptor receives the nipple portion of the breast. A reservoir

having an interior volume is removably connected to, encloses, and forms a single unit with the adaptor, where the interior volume of reservoir receives the breast milk expressed from the woman's breast. The Elvie Stride including its reservoir is advertised and promoted by Chiaro as designed to store milk in the reservoir within a brassiere worn by the woman.

## CHIARO'S NOTICE OF THE ASSERTED PATENTS

22. Chiaro has had knowledge of the Asserted Patents since not later than June 15, 2018.

23. As alleged previously, Chiaro announced its Elvie wearable breast pump in September 2018 at the Kind + Jugend tradeshow, a preeminent international baby products faire at the time, in Cologne, Germany. In a year prior, at the same trade show in Cologne, Germany, Chiaro's co-founder and CEO, Tania Boler, sought out Dao Health's Freemie® booth, spending an inordinate amount of time asking Mr. Garbez about Dao Health's products, the breast milk pump market, and complimenting Dao Health on the disruptive impact Freemie® products have had in the "femtech" market.

24. During the hours Ms. Boler spent at the Dao Health booth, Mr. Garbez answered her many questions about the Freemie®, and specifically informed her of Dao Health's several patents protecting its products, including the Asserted Patents. While Ms. Boler held the Freemie® in her hand, Mr. Garbez also suggested to her that she take note of Dao Health's patents, the numbers of which were printed on the packaging for the Freemie®, to determine their scope of coverage.

25. Ms. Boler spent well over an hour at the Dao Health booth at the tradeshow and she advised Mr. Garbez that her company was exhibiting a totally different product at the tradeshow,

namely, a pelvic floor trainer. Ms. Boler invited Mr. Garbez to visit her company's booth, which Mr. Garbez did and there he viewed Chiaro's pelvic floor trainer product.

26. Further evidencing Chiaro's awareness of the Asserted Patents since no later than June 15, 2018, Chiaro has cited the Asserted Patents in several of its patent applications which issued as patents. In U.S. Patent Application Serial No. 16/009,547, filed on June 15, 2018 and which issued as U.S. Patent No. 10,926,011, Chiaro identified and cited as prior art both of the Asserted Patents[1] in an Information Disclosure Statement filed with the U.S. Patent and Trademark Office. As well, the '772 Patent and the patent application which issued as the '915 Patent are listed on the face of the '011 Patent.

27. Similarly, on December 13, 2019, Chiaro filed another U.S. Patent Application Serial No. 16/713,099, which issued as U.S. Patent No. 10,881,766 on January 5, 2021, identifying and citing the '772 Patent and the published patent application which issued as the '915 Patent as prior art in an Information Disclosure Statement.  Chiaro also listed the '772 Patent and the patent application which issued as the '915 Patent on the face of the '766 Patent.

28. On March 16, 2021, Chiaro filed yet another U.S. Patent Application Serial No. 17/203,259, which issued as U.S. Patent No. 11,324,866 on May 10, 2022. Chiaro identified the '772 Patent and the patent application which issued as the '915 Patent as prior art, as is reflected on the face of the '866 Patent.

29. For the reasons described above, Chiaro's willful infringement of the Asserted Patents constitute the type of wanton, egregious, and outrageous conduct warranting an award of enhanced damages pursuant to 35 U.S.C. § 284.

---

[1] Although Chiaro cited the '772 Patent in its patent application and on the face of its issued patent, curiously, Chiaro cited only to U.S. Published Patent Application No. 2008/0262420, which issued as the '915 Patent on July 14, 2009, rather than to the '915 Patent itself.

## COUNT ONE
## INFRINGEMENT OF THE '915 PATENT

30. Dao Health repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

31. The '915 Patent generally relates to a compact and hands-free human breast milk collection device that fits into and is supported by a mother's existing or nursing brassiere. The milk collection device is configured to be attached to an alternating vacuum force pump, and the expressed milk is collected in a reservoir which is disposed in and supported by the mother's brassiere.

32. For example, claim 11 of the '915 Patent recites:

> 11. A breast milk collection device, comprising:
>
> a funnel shaped breast adaptor, said breast adaptor adapted to receive a woman's breast therein;
>
> a reservoir, said reservoir having an internal volume, said internal volume adapted to receive and store breast milk produced from said woman's breast seated in said breast adaptor;
>
> said breast adaptor and said reservoir forming a single unit adapted to fit within said woman's brassiere; and
>
> said internal volume adapted to communicate with an external suction source, said external suction source adapted to cyclically provide suction force to said internal volume of said reservoir and relieving and suction force in the internal volume of said reservoir.

33. Chiaro has directly infringed and continues to directly infringe, literally and/or under the Doctrine of Equivalents, at least claim 11 of the '915 Patent, in violation of 35 U.S.C. § 271. For example, Chiaro has and continues to, without authorization, make, offer for sale, sell and import breast milk collection devices such as the Elvie Pump and the Elvie Stride ("the '915 Accused Devices") that are described in and infringe the asserted claims of the '915 Patent.

34. The '915 Accused Devices satisfy all claim limitations of the asserted claims of the '915 Patent, including at least claim 11.

35. By way of a non-limiting example, Chiaro's Elvie Pump and Elvie Stride breast milk collection devices are adapted to be secured in and supported by an ordinary or nursing brassiere worn by a lactating woman.

36. The Elvie Pump and Elvie Stride devices each include a funnel shaped breast adaptor adapted to receive a woman's breast in the adaptor, and a reservoir having an internal volume, with the internal volume adapted to receive and store breast milk produced from the woman's breast seated in the breast adaptor.

37. Further, in each of the Elvie Pump and Elvie Stride, the breast adaptors and reservoirs together form a single unit adapted to fit within the woman's brassiere.

38. Further, the internal volume of Elvie Stride's and Elvie Pump's reservoir is adapted to communicate with an external suction source, where the external suction source is adapted to cyclically provide suction force to the internal volume of the reservoir and relieving the suction force in the internal volume of the reservoir.

39. Since having notice of the '915 Patent, Chiaro has indirectly infringed, and continues to indirectly infringe the '915 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including Chiaro's OEMs, agents, affiliates, partners, retail partners, service providers, importers, resellers, customers, end users, and/or distributors, in this judicial district and elsewhere in the United States, through the dissemination, manufacture, distribution, importation, and maintenance of the '915 Accused Devices, and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products

with knowledge and the specific intent that its efforts will result in the direct infringement of the '915 Patent.

40. Chiaro's acts of infringement have caused and continue to cause damage to Dao Health, and Dao Health is entitled to recover from Chiaro the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty, lost profits, and/or a lump sum through the expiration date of the '915 Patent, for the use made of the invention described and claimed in the '915 Patent, together with interest and costs as fixed by the Court.

41. Chiaro has undertaken these acts of infringement despite knowing that such actions infringe at least claim 11 of the '915 Patent. Accordingly, Chiaro has willfully infringed and continues to willfully infringe at least claim 11 of the '915 Patent.

## COUNT TWO
## INFRINGEMENT OF THE '772 PATENT

42. Plaintiff Dao Health repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

43. The '772 Patent generally relates to a hands-free human breast milk collection device that fits into a lactating mother's existing nursing or standard brassiere. The breast milk collection device of the '772 Patent also includes a flexible bladder that isolates a source of alternating vacuum force from the milk flowing in a fluid passageway formed in the milk collection device. The claims of the '772 Patent, including independent claim 1, recite novel and inventive structure and functions to express milk from a lactating mother's breast, to store the expressed milk in a reservoir supported by the mother's brassiere, and to prevent the milk from backflowing into the source of alternating vacuum force.

44. For example, claim 1 of the '772 Patent recites:

> 1. A breast milk collection device comprising:
>
> a breast adaptor having a first receiving end adapted to fittingly and sealingly receive at least a portion of a woman's breast, the adaptor having a second end opposite the first end, the second end including a first aperture adapted to receive a nipple portion of the breast;
>
> a reservoir coupled with and enclosing the adaptor to form a single unit with the adaptor, an interior volume of the reservoir adapted to receive breast milk produced from the woman's breast in said breast adaptor through the first aperture of the second end of the adaptor, the interior volume of the reservoir adapted to store the milk within a brassiere worn by a woman, the reservoir adapted to be supported by the brassiere;
>
> a valve assembly disposed between and surrounded by the adaptor and the reservoir, the valve assembly alternately opening and closing fluid communication between the adaptor and the reservoir, and
>
> the valve assembly creating a reduced volume in communication with said second end of said adapter, said reduced volume being less than said interior volume of said reservoir.

45. Chiaro has directly infringed and continues to directly infringe, literally and/or under the Doctrine of Equivalents, at least claim 1 of the '772 Patent in violation of 35 U.S.C. § 271. For example, Chiaro has and is, without authorization, made, offered for sale, sold and caused to be imported its Elvie Stride breast milk collection devices (the "'772 Accused Devices"), the structure and function of which expresses and collects breast milk from a nursing mother as described in the asserted claims of the '772 Patent.

46. The '772 Accused Devices satisfy all claim limitations of the asserted claims of the '772 Patent, including claim 1.

47. By way of a non-limiting example, the Elvie Stride products are breast milk collection devices comprising a breast adaptor with a first receiving end adapted to fittingly and sealingly receive at least a portion of a woman's breast, the adaptor having a second end opposite

the first end, the second end including a first aperture adapted to receive a nipple portion of the breast.

48. Further, the '772 Accused Devices comprise a reservoir coupled with and enclosing the adaptor to form a single unit with the adaptor, an interior volume of the reservoir adapted to receive breast milk produced from the woman's breast in the breast adaptor through the first aperture of the second end of the adaptor. The interior volume of the Elvie Stride's reservoir is adapted to store the milk within a brassiere worn by a woman, and the reservoir is adapted to be supported by the woman's brassiere.

49. In addition, the '772 Accused Devices include a valve assembly disposed between and surrounded by the adaptor and the reservoir, the valve assembly alternately opening and closing fluid communication between the adaptor and the reservoir.

50. Further, the valve assembly in each of the '772 Accused Devices creates a reduced volume that communicates with the second end of the adaptor, the reduced volume being less than the interior volume of the reservoir.

51. In addition, each of the Elvie Stride products includes a second volume formed in the valve assembly, and the valve assembly includes an opening extending between a source of vacuum pressure and the second volume.

52. Further, in each of the '772 Accused Devices, the second volume is less than the interior volume of the reservoir, and the valve assembly includes a valve alternately opening and closing communication between the adaptor and the reservoir.

53. Since having notice of the '772 Patent, Chiaro has indirectly infringed, and continues to indirectly infringe the '772 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by others, including Chiaro's OEMs, agents,

affiliates, partners, retail partners, service providers, importers, resellers, customers, end users, and/or distributors, in this judicial district and elsewhere in the United States, through the dissemination, manufacture, distribution, importation, and maintenance of the '772 Accused Devices, and the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to such products with knowledge and the specific intent that its efforts will result in the direct infringement of the '772 Patent.

54. Chiaro's acts of infringement have caused and continue to cause damage to Dao Health, and Dao Health is entitled to recover from Chiaro the damages it has sustained as a result of those wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty, lost profits, and/or a lump sum through the expiration date of the '772 Patent, for the use made of the invention described and claimed in the '772 Patent, together with interest and costs as fixed by the Court.

55. Chiaro has undertaken these acts of infringement despite knowing that such actions infringe at least claim 1 of the '772 Patent. Accordingly, Chiaro has willfully infringed and continues to willfully infringe at least claim 1 of the '772 Patent.

## DEMAND FOR JURY TRIAL

56. Dao Health hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## FEES AND COSTS

57. To the extent that Chiaro's willful and deliberate infringement or litigation conduct supports a finding that this is an "exceptional case," an award of attorney's fees and costs to Dao Health is justified pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Dao Health prays for relief against Chiaro as follows:

a. Entering judgment declaring that Chiaro has willfully infringed the Asserted Patents;

b. Awarding Dao Health damages arising out of this infringement of the Asserted Patents, including enhanced damages pursuant to 35 U.S.C. § 284, and prejudgment and post-judgment interest, in an amount according to proof;

c. Awarding on-going royalties to Dao Health;

d. Awarding costs and attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

e. Awarding to Dao Health such other costs and further relief as the Court deems just and proper.

Dated: June 21, 2023

Respectfully submitted,

By: /s/ Meng Xi
　　Meng Xi – Lead Counsel
　　　Texas State Bar No. 24132850
　　　mxi@susmangodfrey.com
　　Shawn Blackburn
　　　Texas State Bar No. 24089989
　　　sblackburn@susmangodfrey.com
　　Bryce T. Barcelo
　　　Texas State Bar No. 24092081
　　　bbarclo@susmangodfrey.com
　　**SUSMAN GODFREY LLP**
　　1000 Louisiana Street, Suite 5100
　　Houston, TX 77002
　　Telephone: (713) 651-9366
　　Facsimile: (713) 654-6666

　　Andrea Fair
　　　Texas State Bar No. 24078488
　　　andrea@wsfirm.com
　　**WARD, SMITH & HILL, PLLC**
　　P.O. Box 1231

Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF DAO HEALTH**