IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **DAO HEALTH**, | |
| Plaintiff, | |
| v. | Civil Action No. 2:23-cv-00289-JRG |
| **CHIARO TECHNOLOGY LIMITED**, | PATENT CASE |
| Defendant. | |

**CHIARO TECHNOLOGY LIMITED'S**
**OPPOSED MOTION TO COMPEL DISCOVERY FROM DAO HEALTH**

Defendant Chiaro Technology Limited ("Elvie") respectfully moves the Court for an order compelling Plaintiff Dao Health to produce responsive, non-privileged emails from (1) Howard Rockman, Dao's patent prosecution attorney whom Dao identified as a person having discoverable information; and (2) non-Dao email accounts used extensively by current Dao employees to conduct business for Dao.

The individuals from whom the disputed emails are sought have all been identified by Dao as having discoverable information. Dao, however, has refused to collect the disputed emails on the basis that none of the emails are within its possession, custody, or control. But the law is clear that Dao has a legal right (i) as Mr. Rockman's client, its files and Mr. Rockman's Dao-related emails, and (ii) Dao-related emails from its employees' personal email accounts.

## ARGUMENT

Discovery is permitted into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.C.P. 26(b)(1). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *EVS Codec Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 2020 WL 6365514, at *1 (E.D. Tex. Apr. 9, 2020).

### A. Dao Should Produce Relevant, Non-Privileged Emails From Howard Rockman, Whom Dao Has Stated Has Discoverable Information.

The Court should compel Dao to produce the responsive, non-privileged emails of Howard Rockman. Mr. Rockman was, and is, Dao's attorney who prosecuted the asserted patents. Mr. Rockman does not *just* possess privileged information or information one could glean from reading

1

the file histories. Instead, Mr. Rockman indisputably possesses relevant knowledge and information as demonstrated by Dao's Initial and Additional Disclosures:

| No. | Name, Address, Telephone | Subjects of Discoverable Information |
|---|---|---|
| 3. | Howard Rockman<br><br>Contact through Susman Godfrey LLP. | Mr. Rockman was patent prosecution counsel for the '915 Patent and '772 Patents and has knowledge of the conception, reduction to practice, and prosecution of the applications resulting in issuance of the Asserted Patents. |

[1]

Dao's Initial Disclosures also invited Elvie to "contact [Mr. Rockman] through [Dao's litigation counsel] Susman Godfrey LLP." To be sure, nearly 3 months later, Dao confirmed the importance of Mr. Rockman's knowledge and information in an interrogatory response, stating "Mr. Rockman is one of three persons most knowledgeable about the conception of Dao's patented technologies and patents."

Elvie, naturally, identified Mr. Rockman as a custodian Dao should collect emails from. In response, Dao threatened incongruously:

> If Elvie persists on this course, then the inboxes of the Sterne Kessler attorneys who assisted in the prosecution of Elvie's patents including those citing the Patents-In-Suit must also be searched and relevant documents will need to be produced or logged. Your choice.[2]

Moreover, Dao raised two objections. First, Dao objected that Mr. Rockman's emails are not within its possession, custody, or control. Second, Dao objected that Mr. Rockman's emails "are privileged and a search of that inbox would be overly burdensome, not proportional to the needs of the case, and not likely to lead to the discovery of admissible evidence."

---

[1] Elvie can provide the Court with complete copies of all materials referenced upon Request.
[2] If Dao did not intend this statement as a threat, that is itself an illuminating fact. In that case, Dao must believe that an attorney's files are in the control of her client and that it is fair game under the rules to take discovery of a party's patent-prosecution attorney. Be that as it may, Sterne Kessler's relationship to this case is entirely different than Mr. Rockman's. Unlike Mr. Rockman, Sterne Kessler has not prosecuted any patent asserted in this case. And no one has identified any Sterne Kessler attorney as possessing information relevant to this case, as Dao has with Mr. Rockman.

*Possession, Custody, or Control*. In resolving disputes over questions of possession, custody, or control, courts in this district apply a "legal right" test. And Dao, as Mr. Rockman's client, holds a well-established legal right to access and obtain its files from Mr. Rockman. [3]

Indeed, it is unclear whether Dao even disagrees with the correctness of the notion that a client has a legal right to obtain its files from its attorney and, therefore, controls those files. That is because Dao's possession-custody-control objection has been premised on the false notion that the Rockman-email request would require Dao itself to directly access Mr. Rockman's entire email inbox. For example, in framing its position Dao has stated it "does not have the *legal right to access Mr. Rockman's email inbox*" (Ex. C) and "none of the cases [Elvie cites] stand for the proposition that *an attorney's entire email inbox* is within the possession, custody, or control of a client." But, of course, Elvie is not asking (and the Court's discovery order does not require) that Dao directly access Mr. Rockman's email account, let alone his "entire email inbox." Instead, Mr. Rockman only needs to turn over to Dao those emails that belong to Dao. *See* Illinois State Bar Ass'n, Advisory Op. No. 94-13 (1995) (stating a lawyer is required to provide client copies of correspondence between itself and the client, and between lawyer and third parties, so long as

---

[3] *See also Acuna v. Connecticut Gen. Life Ins. Co.*, Case No. 5:05-cv-00022, 2005 WL 8160789, at *2 (E.D. Tex. July 14, 2005) (ordering plaintiff to produce documents in her care, custody and control and the care, custody, and control of her agents, including her personal accountant and attorney, related to defendant's request for documents related to an affirmative defense); *Duarte v. St. Paul Fire & Marine Ins. Co.*, Case No. EP-14-CV-305-KC, 2015 WL 7709433, at *5 (W.D. Tex. Sept. 25, 2015) ("Rule 34's definition of possession, custody, or control, includes more than actual possession or control of [documents]; it also contemplates a party's legal right or practical ability to obtain [documents] from a [non-party] to the action. Moreover, [a] party must make a reasonable search of all sources reasonably likely to contain responsive documents. The term 'all sources' includes plaintiff's attorney, expert, insurance company, accountant, spouse, agent, etc."); *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros.*, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."); *Lans v. Gateway 2000, Inc.*, 110 F.Supp.2d 1, 5 (D.D.C. 2000) ("It is well established that documents in the possession of a party's agent, such as an attorney or accountant, are deemed to be in the party's possession because the party retains control over the documents."); *See Archer v. Sterquell*, Case No. 2:15-cv-00078-SRC, 2005 WL 8157959, at *5 (N.D. Tex. Nov. 29, 2005) ("Because Archer has the legal right to obtain documents in his former attorneys' possession, Plaintiff is required to produce such documents in the possession of attorneys Allison and Wilkerson which are responsive to Defendants' request.").

client reimburses lawyer for reasonable expenses in providing copies).[4] Then, Dao can run search terms, review the emails for privilege, log privileged emails, and produce the rest.

*Privilege, Burden, Proportionality, & Relevance.*[5] Dao's substantive objections also lack merit. Clearly, Mr. Rockman possesses relevant information; after all, Dao has twice stated precisely that. Moreover, Mr. Rockman's emails are proportional to the needs of this case. Among other things, Dao has identified him as one of the three most knowledgeable people about the conception of the claimed inventions in this case; the other two identified by Dao were—co-founders and named inventors Stella Dao and Dan Garbez. And Mr. Rockman may be the only person with documents relevant to these topics. According to Dao's Interrogatory Responses, the claimed inventions were conceived of no later than February 2004, and Dao does not have any emails from its two inventors earlier than or contemporaneous with that alleged conception date.[6]

Dao's objection that "*a search* of [Mr. Rockman's] inbox would be overly burdensome" is premature and without merit. It is premature because the facts needed to assess burden are still unknown (e.g. Dao has not shared the size of Mr. Rockman's inbox or hit counts). It lacks merit because Dao does not need to "search" Mr. Rockman's "inbox." Instead, Mr. Rockman must, by the rules of professional responsibility, provide Dao copies of his Dao-related correspondence. Then, Dao only needs to conduct key-word searching. If the search of Mr. Rockman's inbox returns an inordinately large number of hits, the parties can address that issue then.

---

[4] According to his website biography, Mr. Rockman practices from and is licensed to practice in Illinois.
[5] Dao's objection that Mr. Rockman's emails are "not likely to lead to the discovery of admissible evidence" is inapposite. The 2016 amendment of Rule 26 eliminated the "reasonably calculated to lead to the discovery of admissible evidence" language from that rule. The operative version of the rule now states: "Information within this scope of discovery need not be admissible in evidence to be discoverable."
[6] According to Dao's Disclosures of Size and Date Range of Email Files Maintained, Dao only maintains emails for Dr. Dao and Mr. Garbez since May 2004 and February 2005, respectively.

As to privilege, Dao cannot refuse to collect emails on that basis. Instead, Dao must produce non-privileged documents from Mr. Rockman and log the privileged emails withheld from production, just as the Discovery Order in this case contemplates. (Discovery Order, Dkt. 27, ¶ 6).

### B. Dao Should Produce Emails From Individuals Who Used Their Personal Email Accounts To Conduct Dao Business.

Elvie also asked Dao to produce emails from four of its current employees' non-Dao email accounts because those accounts were used extensively to conduct Dao business. The four individuals—Ron Briggs, Jennifer Reuther, Brian McCollum, and Theresa Mulnix—each performed work for Dao in a consulting or freelance capacity before their current formal employment with Dao. The parties agree that these individuals are likely to possess discoverable information; Dao identified each of them in its Identification of Significant Email Custodians. Still Dao refuses to collect any email generated before they were "formally hired" by Dao (Ex. A), despite collecting from the personal email accounts of co-founders Dr. Dao and Mr. Garbez.[7]

Dao has not disputed (1) that these employees used non-Dao accounts to conduct Dao business for significant periods before their formal employment or (2) that their non-Dao emails likely contain discoverable information. Instead, Dao asserts that emails from these non-Dao accounts are not within its possession, custody or control. (Ex. A). As with Mr. Rockman's email, Dao's position lacks merit. *See Ultravision Tech., LLC v. Govision, LLC*, Case No. 2:18-cv-00100-JRG-RSP, 2020 WL 10692709, at *2 (E.D. Tex. Aug. 28, 2020) (finding personal email account of party employee under party control); *Tradeshift, Inc. v. BuyerQuest, Inc.*, No. 20-CV-01294-RS (TSH), 2021 WL 1586283, at *2 (N.D. Cal. Apr. 23, 2021) ("[T]he Court [] disagrees that when BuyerQuest's CEO used his personal email to conduct company business, those emails are

---

[7] Dao agreed to collect Dr. Dao and Mr. Garbez's personal email accounts because they are Dao co-founders.

5

somehow outside the company's reach or discovery obligations. Such an approach would gut Rule 34 and make it way too easy for high-level executives to hide evidence."); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2972806, *2 (N.D. Cal. July 12, 2017) ("[Otto Trucking] cannot hide responsive documents simply because these officers' work for Otto Trucking was done using their personal email accounts, especially since they are all current Otto Trucking officers.").

The precise details of these individuals' consulting engagements (insofar as they exist) with Dao are unknown. What is known, however, is that:

- Mr. Briggs,[8] Dao's Director of Sales, has worked for Dao since February 2006, advising Dao's CEO on the go-to-market strategy for its Freemie product and, according to Dao, used his personal @yahoo.com account to perform work for Dan Garbez or Dao from December 2006 to November 2013. (Ex. B at 3).

- Ms. Reuther,[9] Dao's Director of Customer Experience, worked for Dao from May 2006 to January 2011 and again from October 2014 to present and, according to Dao, used her personal @yahoo.com account to perform work for Dao from August 2006 to January 2011 and from October 2014 to present. (Ex. B at 4-5).

- Mr. McCollum,[10] Dao's Quality and Operations Manager, has worked for Dao since February 2009 and, according to Dao, used several personal @gmail.com accounts to perform work for Dao from February 2009 to May 2013. (Ex. B at 4).

---

[8] Dao has limited its collection from Mr. Briggs to his Dao email account for the period of 2013 to the present.
[9] Dao has limited its collection from Ms. Reuther to her Dao email account for the period of October 2014 to present.
[10] Although Dao disclosed that it maintains Mr. McCollum's email files from February 2009 to present and Mr. McCollum only received a Dao email starting May 2013, Dao maintains that it will not collect from Mr. McCollum's personal email accounts.

6

- Ms. Mulnix,[11] Dao's Controller, has worked for Dan Garbez since before Dao was formed, providing accounting and tax preparation services, and, according to Dao, used her personal @comcast.net account to perform work for Dan Garbez or Dao from February 2006 to February 2014. (Ex. B at 4).

Just as Dao has a legal right to obtain Dao-related documents from its attorney, it has a legal right to obtain Dao-related emails from its current employees' personal accounts, including from before they became on-the-books employees and were simply agents of Dao. *See Duarte v. St. Paul Fire & Marine Ins. Co.*, Case No. EP-14-CV-305-KC, 2015 WL 7709433, at *5 (W.D. Tex. Sept. 25, 2015) ("[A] party must make a reasonable search of all sources reasonably likely to contain responsive documents. . . . The term 'all sources' includes plaintiff's attorney, *expert*, insurance company, accountant, spouse, agent, etc.") (emphasis in original) (internal quotations omitted). It would elevate form over substance and encourage gamesmanship if Dao could avoid searching and producing years' worth of company-related emails in a current employee's personal inbox merely because the emails were sent from a personal email address before the employee was "officially hired" and issued a company email address.

## CONCLUSION

For the foregoing reasons, Elvie respectfully requests that the Court compel Dao to collect, search, and produce relevant, non-privileged emails from (1) Howard Rockman; and (2) the private email accounts for current Dao employees who used said accounts to conduct Dao business.

---

[11] Dao has limited its collection from Ms. Mulnix to her Dao email account for the period of January 2014 to present.

Dated: June 11, 2024

_____
Nirav N. Desai (*Pro Hac Vice*)
Byron L. Pickard (*Pro Hac Vice*)
Josephine Kim (*Pro Hac Vice*)
Alexander Covington (*Pro Hac Vice*)
Joseph Kim (*Pro Hac Vice*)
Alex Alfano (*Pro Hac Vice*)
Michael Webb (*Pro Hac Vice*)
Paige Cloud (*Pro Hac Vice*)
Zachary Jacobs (D.C. Bar No. 90005128)
Christopher Coleman (*Pro Hac Vice*)
Richa Patel (*Pro Hac Vice*)
**STERNE, KESSLER, GOLDSTEIN & FOX**
1101 K Street NW, 10th Floor
Washington, DC 20005

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH LLP**
303 South Washington Ave.
Marshall, Texas 75670

*Attorneys for Defendant*
*Chiaro Technology, Limited.*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 11, 2024.

                                            */s/ Melissa R. Smith*
                                            Melissa R. Smith

## CERTIFICATE OF CONFERENCE

I hereby certify that on May 24, 2024 Defendant's counsel met and conferred with Plaintiff's counsel pursuant to Local Rule CV-7 regarding the substance of this motion. Plaintiff's counsel indicated that Plaintiff opposes this motion.

                                            */s/ Melissa R. Smith*
                                            Melissa R. Smith